**UNITED STATES DISTRICT COURT**

                     **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMANDO BARRERA AGUILAR, | No. CV 16-7565 SS |
| Plaintiff, | |
| v. | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | |

                                  **I.**

                            **INTRODUCTION**

Armando Barrera Aguilar ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB") and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12). For the reasons stated below, the decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

\\
\\

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**III.**

# THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2011, and had not engaged in substantial gainful activity since October 30, 2008, his alleged onset date. (Certified Administrative Record ("AR") 31). At step two, the ALJ found that Plaintiff had the following severe impairments: a history of musculoligamentous strain of the lumbar spine, mild to moderate lumbosacral disc disease, mild degenerative disc disease of the cervical spine, mild degenerative disc disease of the thoracic spine, a history of right inguinal hernia, status post hernia repair, depressive disorder and anxiety disorder, not otherwise specified. (AR 32).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 36).

The ALJ then found that Plaintiff had the following residual functioning capacity ("RFC"):

> [Plaintiff] can lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday. [Plaintiff] can frequently climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. [Plaintiff] is limited to the performance of simple repetitive tasks. [Plaintiff] can

> have occasional supervision and he can occasionally accept instructions and/or criticism from supervisors. He can have occasional contact with coworkers and incidental contact with the public. [Plaintiff] can have occasional changes to a routine work setting.

(AR 37).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (AR 42). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (AR 43).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

A. **The ALJ Failed To Provide Specific And Legitimate Reasons For Rejecting Dr. Fierro's Opinion**

Plaintiff contends that the ALJ failed to give reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating psychologist, Dr. Arturo Fierro, Ph.D. (Pl. MSO at 4). The Court agrees.

When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for

"clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted by another doctor, as is the case here, it may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. Id. at 830-31; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Fierro is a Ph.D. licensed clinical psychologist who treated Plaintiff weekly beginning in April of 2014. (AR 1117). On March 15, 2016, Dr. Fierro listed his diagnostic impression of Plaintiff as: (1) Major Depressive Disorder severe with Psychotic Features, Recurrent; and (2) Schizotype Personality Disorder. (AR 1120). He noted that "[d]espite [Plaintiff's] efforts to maintain stability both as so far as medications and psychiatric treatment this patient does not appear able to return to more gainful and stable living. His psychiatric and physical functional impairments now appear chronically disabling." (Id.).

The ALJ gave little weight to Dr. Fierro's opinion after determining that: (1) Dr. Fierro's opinion was not supported by his own records; (2) despite the severity of the evaluations, Dr. Fierro did not seek to hospitalize Plaintiff or make a referral to "an actual psychiatrist"; (3) Dr. Fierro's assessments suggest

greater limitations than Plaintiff alleges and is contradicted by Plaintiff's daily activities; and (4) while Dr. Fierro offered the impression of psychotic features and schizotype personality disorder, there is no evidence that the Plaintiff was prescribed medication for psychotic symptoms. (AR 39-40).

1. **Dr. Fierro's Records**

The ALJ argues that Dr. Fierro's opinion is not supported by his own records. (AR 39). The ALJ further argues that the progress notes, specifically those regarding Plaintiff's current level of functioning, "appear primarily to be reiterations of the claimant's complaints." (Id.).

The ALJ improperly rejected Dr. Fierro's opinion. First, the ALJ found that Dr. Fierro's progress notes are inconsistent because they "indicate a waxing and waning." (AR 41). The ALJ also notes that medical records indicate that Plaintiff experienced "ups and downs." (AR 39). However, "waxing" and "waning" do not necessarily contradict the existence of extreme mental limitations. Experiencing some "ups" and "fair days" does not preclude the possibility of such mental limitations, either. Therefore, these do not constitute specific and legitimate reasons for rejecting Dr. Fierro's opinion.

Additionally, while Dr. Fierro does not appear to have conducted significant diagnostic testing, his opinion does not

seem to rely exclusively on Plaintiff's subjective symptoms. For example, Dr. Fierro's April 23, 2014 assessment includes clinical observations regarding Plaintiff's appearance, attitude, psychomotor activity, speech, mood and affect, among others. (AR 1051). Likewise, his March 2016 report states that Plaintiff's "intellectual functioning and sensorium was established through the mental status examination, which displays episodes of poor memory and memory deficits for recent and remote recall, and poor concentration." (AR 1118).

**2. Hospitalization**

The ALJ rejects Dr. Fierro's opinion because, despite the severity indicated in his evaluations, Dr. Fierro did not seek to hospitalize Plaintiff or make a referral to an "actual psychiatrist". (AR 39). First, Dr. Fierro's assessment of Plaintiff's symptoms is not inconsistent with a lack of hospitalizations. Not every individual with debilitating mental illness requires hospitalizations, nor are hospitalizations appropriate in all instances.

Second, Dr. Fierro's decision not to refer Plaintiff to an "actual psychiatrist" does not justify rejecting his professional opinion without knowing and evaluating his reasons. The ALJ's rejection of Dr. Fierro's opinion on this basis is improper. See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he

had a duty to conduct an appropriate inquiry, for example, by supoenaing the physicians or submitting further questions to them" or by "continuing the hearing to augment the record")(citation omitted); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(the ALJ's duty to develop the record is triggered when there is "ambiguous evidence" or when "the record is inadequate to allow for proper evaluation of the evidence"); Brown v. Heckler, 713 F.2d 441, 441 (9th Cir. 1983)("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" even when the claimant is represented by counsel).

On remand, the ALJ should develop the record to address any ambiguity in the medical evidence.

**3. Daily Activities**

The ALJ contends that Dr. Fierro's assessments suggest greater limitations than Plaintiff alleges and are contradicted by Plaintiff's daily activities. (AR 40). Plaintiff contends that the "fact that [Plaintiff] can take public transportation; goes to eat; takes care of his personal needs – does not mean that Dr. Fierro's opinion is inconsistent." (Pl. MSO at 8). The Court agrees.

Evidence regarding Plaintiff's daily activities does not contradict Dr. Fierro's opinion that he has "extreme" limitations in most areas of mental functioning. A plaintiff does not need to be completely incapacitated to be disabled. Fair, 885 F.2d at 603; Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.") (citation and quotations omitted); Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Instead, a plaintiff's daily activities are inconsistent with claimed disability where the plaintiff is able to spend a substantial part of the day engaged in activities that are transferable to a work setting. Fair, 885 F.2d at 603. Here, the record does not show that Plaintiff's limited daily activities meet this requirement. The ALJ identified the fact that Plaintiff goes to church, feels hopeful due to spiritual support, is able to take public transportation, is able to care for personal needs, eats at fast food restaurants, goes to the park, and drives a motor vehicle as evidence contradicting Dr. Fierro's opinion of "extreme" mental limitations. (AR 40). These activities are not inconsistent with extreme mental limitations. Moreover, these activities do not demonstrate that Plaintiff is able to spend a substantial part of his day engaged in activities that are transferrable to a work setting.

The ALJ therefore improperly relied upon Plaintiff's daily activities as a basis for rejecting Dr. Fierro's opinion. See Gallant v. Heckler, 753 F.2d 1450, 1453-55 (9th Cir. 1984) ("Gallant") (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to constant back and leg pain). Remand is required.

**4. No Medication For Psychotic Symptoms**

The ALJ stated that, while Dr. Fierro offered the impression of psychotic features and schizotype personality disorder, there is no evidence that Plaintiff is prescribed medication for these symptoms. (AR 40). Plaintiff contends that the ALJ found that because Dr. Fierro did not prescribe medication, Dr. Fierro's opinion lacks substantial evidence. (Pl. MSO at 8).

As a licensed psychologist, Dr. Fierro is likely unable to prescribe any medications to Plaintiff.[2] However, Dr. Fierro is still a specialist, and the Social Security Agency gives more "weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). While Plaintiff's primary care physicians opted to prescribe Zoloft and Elavil to Plaintiff, Dr. Fierro, as a psychologist,

---

[2] California psychologists cannot legally prescribe medication.
See http://www.psychology.ca.gov/consumers/medicate.shtml.

was not permitted to prescribe medication. Moreover, Dr. Fierro could not direct them to prescribe certain medications to Plaintiff. Thus, Dr. Fierro could not prescribe medication himself and did not have control over what other doctors chose to prescribe. Again, remand is required.

### B. The ALJ Failed To Properly Consider The Consultative Examiner's Limitations When Creating The RFC

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416. 945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416. 945(a)(3). See also 20 C.F.R. §§ 404.1513(c), 416. 913(c).

Following a December 2, 2013 examination of Plaintiff, consultative examining psychiatrist Dr. Rama Nadella opined on a series of limitations. (AR 841-845). In issuing his RFC finding, the ALJ stated that he gave "greatest weight to the opinion of the State Agency medical consultants and the reviewing

psychologist [], to find that the claimant is limited to the range of unskilled work described in [the RFC]. Inasmuch as Dr. Nadella's opinion is consistent with those of the State Agency medical consultants, I give it limited weight." (AR 39). The ALJ included four limitations similar to those proposed by Dr. Nadella. However, he did not include two of Dr. Nadella's limitations stating that Plaintiff is moderately limited in performing work activities on a consistent basis and in the ability to deal with the usual stressors encountered in competitive work.

Plaintiff contends that the ALJ never assessed any weight to Dr. Nadella's opinion. (Pl. MSO at 11). Plaintiff argues that it can be inferred that the ALJ gave great weight to Dr. Nadella's opinion by the "similarities of Dr. Nadella's opinion to the ALJ's assessed residual functional capacity." (Id.). But, Plaintiff argues, the ALJ failed to assess two of Dr. Nadella's proposed limitations in the RFC. (Pl. MSO at 12). Therefore, Plaintiff claims, the ALJ failed to fulfill the requirement that he review the record as a whole. (Id.).

Defendant counters that the ALJ did assess weight to Dr. Nadella's opinion. Specifically, the ALJ assigned Dr. Nadella's opinion "limited weight" before moving forward in determining an appropriate RFC. (Def. MSO at 9). Defendant also argues that

the ALJ "properly reviewed the record as a whole and articulated a concrete RFC". (Id.).

The ALJ excluded two of Dr. Nadella's proposed limitations. Accordingly, the ALJ erred by not providing specific and legitimate reasons, supported by substantial evidence, for implicitly rejecting portions of Dr. Nadella's opinion. See Jackson v. Colvin, 2014 WL 562240, at *2 (C.D. Cal. Feb. 11, 2014) (finding ALJ erred in failing to explain why RFC assessment did not adopt certain moderate limitations opined by the consultative examining psychiatrist); Jackson v. Colvin, 2013 WL 1873148, at *5 (C.D. Cal. May 2, 2013) (finding ALJ erred in failing to proffer any reason for not explaining the rejection of consultative psychiatrist's opinion that claimant would have mild to moderate limitations with respect to handling normal stresses at work); see also SSR 85-15, 1985 WL 56857, at *5-6 (Jan. 1, 1985) (emphasizing that mentally impaired people often "have difficulty accommodating to the demands of work and work-like settings" and thus "[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment").

On remand, the ALJ must properly assess Dr. Nadella's opinion and provide specific and legitimate reasons for rejecting any portion of that opinion.

## VI.
## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 1, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**